# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-120

RONNIE FISCHER, Individually,

      Plaintiff,

v.

BMW OF NORTH AMERICA, L.L.C., a Delaware Company;
BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,
a corporation organized under the laws of the Federal
Republic of Germany;
E. A. STORZ GMBH & CO. KG, a corporation organized
under the laws of the Federal Republic of Germany;
BOSAL INTERNATIONAL N.V., a corporation organized under the laws of Belgium

      Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

      RONNIE FISCHER, individually, brings this product liability action against BMW OF

NORTH AMERICA, L.L.C.;BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT;

E. A. STORZ GMBH & CO. KG; and BOSAL INTERNATIONAL N.V., and in support thereof

states and claims as follows:

### PARTIES

1.      Plaintiff Ronnie Fischer is an individual who resides in Denver, Colorado.

2.      Defendant BMW of North America, LLC (hereinafter "Defendant BMW NA") is

a corporation organized and existing under the laws of the State of Delaware with a principal

street and mailing address in the State of New Jersey. Defendant BMW NA is authorized to do business in the State of Colorado.

3.     Defendant Bayerische Motoren Werke Aktiengesellschaft (hereinafter "Defendant BMW AG") is a corporation organized and existing under the laws of the Federal Republic of Germany.

4.     Upon information and belief, Defendant BMW NA is a subsidiary that is owned, in whole or in significant part, by Defendant BMW AG either directly or through ownership of an intermediary subsidiary.

5.     Defendant E. A. Storz GmbH & Co. KG (hereinafter "Defendant Storz") is a corporation organized and existing under the laws of the Federal Republic of Germany.

6.     Defendant Bosal International N.V. is a corporation organized and existing under the laws of Belgium. Upon information and belief, it acquired the assets and/or liabilities of German jack manufacturer E. A. Storz GmbH & Co. KG in or about 2003.

## JURISDICTION AND VENUE

7.     Plaintiff Fischer alleges damages that exceed $75,000, the jurisdictional minimum limits of the United States District Court for the District of Colorado, and the suit is between citizens of different states. Accordingly, subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**FACTS**

9.     On or about January 14, 2016, Plaintiff Fischer commenced the process of changing the front tire on the passenger side of a 2003 BMW 330xi, Vehicle Identification Number WBAEW53463PG21917 (hereinafter "Vehicle").   The subject work was being performed in a parking lot in Denver, Colorado, away from traffic and on a level, firm, and flat surface.

10.     The Vehicle came equipped with a tire jack (hereinafter "Jack"), with use of the Jack working in tandem with the Vehicle in that the tire jack is to be positioned at a jacking point integrated in the Vehicle (hereinafter "Jacking Point").   The Jack and/or Jacking Points were manufactured by Defendant Storz to be used in tandem with the Vehicle and/or Jacking Points manufactured by Defendant BMW AG.

11.     In changing the tire, Plaintiff Fischer utilized the Jack for its intended purpose—to change a flat tire—by placing the Jack in the right passenger side Jacking Point as designed and instructed by the Vehicle's owner's manual.

12.     Despite following the proper procedure and method for using the Jack, as Plaintiff Fischer was changing the tire and the Vehicle was lifted, the Jack and/or Jacking Point failed causing the vehicle to suddenly drop down and pin Plaintiff's Fischer's finger between the asphalt and lug wrench.

13.     As a result of the sudden and unexpected drop of the Vehicle, Plaintiff Fischer suffered and continues to suffer serious and permanent injuries, including involuntary amputation of part of the middle finger of his right hand, as well as other physical and emotional injuries.

14.     As a result of the defects in the Jack and/or Jacking Point, Plaintiff Fischer incurred, without limitation, expenses for medical care, doctors, nurses, laboratory tests, treatment, rehabilitation, medical equipment and other like expenses; loss of income; damages related to physical pain and suffering, impairment, and disfigurement; and damages related to mental suffering and distress.  Plaintiff Fischer's damages exceed $75,000, exclusive of interest and costs.

15.     Plaintiff Fischer had no knowledge of the defective, dangerous, and unsafe conditions of the Jack and/or Jacking Point.

16.     The Vehicle's owner's manual did not include warnings about the risk that the Jack and/or Jacking Point might fail and did not instruct any precautions that might have been taken to avoid injury.

## FIRST CLAIM FOR RELIEF
### (Strict Product Liability – BMW NA)

17.     Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

18.     At all times material to this action, Defendant BMW NA was a seller, manufacturer, wholesaler, distributor, and/or retailer who was engaged in the business of selling or leasing vehicles and/or component tire jacks for resale, use or consumption, including the Jack and/or Jacking Point at issue in this action, throughout the United States, including Colorado.

19.     Upon information and belief, at all times material to this action, Defendant BMW NA had actual knowledge of a defect in the tire jack product and/or jacking points integrated into BMW vehicles, including the Jack and/or Jacking Point at issue, from prior reports of other substantially similar incidents.

4

20.     Upon information and belief, at all times material to this action, Defendant BMW AG designed, manufactured, assembled, produced, fabricated, constructed and/or other otherwise prepared the Jack and/or Jacking Point, or a component thereof, prior to the sale of the product to a user or consumer.  Defendant BMW NA is also considered a manufacturer pursuant to C.RS. § 13-21-401 because it is the seller of the Jack and/or Jacking Point, and is owned in whole or in significant part by the manufacturer Defendant BMW AG.

21.     At the time that the Jack and/or Jacking Point left Defendant BMW NA's control it was defective and was unreasonably dangerous to a person who might reasonably be expected to use it.  These defects include, but are not limited to, the conditions described in the following subparagraphs:

    a.  The Jack's design and/or manufacture make the tire jack unstable and wobbly and difficult to use or hold steady during operation;

    b.  The Jack and Jacking Point's design and/or manufacture makes it unreasonably difficult to insert the Jack into the Vehicle and keep the Jack head in the Jacking Point while using the Jack;

    c.  The Jack's design and/or manufacture exerts lateral forces on the Jacking Point causing it to move away from the Jacking Point and causing the Vehicle to suddenly and unexpectedly drop down;

    d.  The base of the Jack is too small to support the Vehicle;

    e.  The design and/or manufacture of the Jacking Point in which the Jack is to be positioned is defective;

f. No warnings or inadequate warnings were provided about the risks, dangers, and harms presented by the Jack and/or Jacking Point and no reasonable means to reduce such risks, dangers and harms were provided to the end user.

22. The Jack and/or Jacking Point was expected by Defendant BMW NA to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

23. Plaintiff Fischer was a person who would reasonably be expected to use the Jack.

24. The defects in the Jack and/or Jacking Point were the direct and proximate cause of Plaintiff Fischer's injuries and the resulting damages to Plaintiff Fischer.

25. Defendant BMW NA is strictly liable for the injuries to Plaintiff Fischer and for injuries and damages caused by defects and inadequacies in the design and/or manufacture of the Jack and/or Jacking Point.

**SECOND CLAIM FOR RELIEF**
**(Negligence – BMW NA)**

26. Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

27. At all relevant times, Defendant BMW NA owed a duty to Plaintiff Fischer, the end user, to use reasonable care in selling, manufacturing, wholesaling, distributing, and/or retailing a Jack and/or Jacking Point that was safe and sufficiently designed for the intended purpose of changing a tire.

28.     At all relevant times, Defendant BMW NA has a duty to properly warn consumers of the risks, dangers, and harms presented by the Jack and/or Jacking Point and provide reasonable means to reduce such risks, dangers, and harms.

29.     Defendant BMW NA breached its various duties as set forth in this Count. Defendant BMW NA sold, manufactured, wholesaled, distributed, and/or retailed the Jack and/or Jacking Point, that have the following defects, without limitation, described in the following subparagraphs:

    a.  The Jack's design and/or manufacture make the tire jack unstable and wobbly and difficult to use or hold steady during operation;

    b.  The Jack and Jacking Point's design and/or manufacture makes it unreasonably difficult to insert the Jack into the Vehicle and keep the Jack head in the Jacking Point while using the Jack;

    c.  The Jack's design and/or manufacture exerts lateral forces on the Jacking Point causing it to move away from the Jacking Point and causing the Vehicle to suddenly and unexpectedly drop down;

    d.  The base of the Jack is too small to support the Vehicle;

    e.  The design and/or manufacture of the Jacking Point in which the Jack is to be positioned is defective;

    f.  No warnings or inadequate warnings were provided about the risks, dangers, and harms presented by the Jack and/or Jacking Point and no reasonable means to reduce such risks, dangers and harms were provided to the end user.

30.     Defendant BMW NA's negligent acts and omissions were the direct and proximate cause of the injuries to Plaintiff Fischer and the resulting damages.

## THIRD CLAIM FOR RELIEF
### (Breach of Warranties – BMW NA)

31.     Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

32.     An implied warranty of merchantability and/or an implied warranty of fitness existed with respect to the Jack and/or Jacking Point.

33.     Defendant BMW NA knew or had reason to know the particular purpose of the Jack and/or Jacking Point and that end users such as Plaintiff Fischer would rely on Defendant BMW NA's skill or judgment in selling, manufacturing, wholesaling, distributing, or retailing goods suitable for such purposes and uses.

34.     The Jack and/or Jacking Point was defective and not fit for the particular purpose for which it was intended and for which it was used.

35.     At the time the Jack and/or Jacking Point was designed, manufactured and/or sold with the Vehicle, Defendant BMW NA knew or reasonably should have known that it was defective and not reasonably safe for the uses intended.

36.     At the time the Jack and/or Jacking Point was designed, manufactured and sold with the Vehicle, Defendant BMW NA reasonably should have known that it was defective and posed unreasonable risks to the end user.

37.     Defendant BMW NA's breach of its implied warranties was a direct and proximate cause of the injuries to Plaintiff Fischer and the resulting damages to Plaintiff Fischer.

## FOURTH CLAIM FOR RELIEF
### (Strict Product Liability – BMW AG)

38.     Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

39.     At all times material to this action, Defendant BMW AG designed, assembled, produced, fabricated, constructed, tested, inspected and/or otherwise prepared vehicles or a component part, such as tire jacks and/or jacking points integrated into BMW vehicles, including the Jack and/or Jacking Point at issue in this action, for sale throughout the United States, including Colorado.

40.     At the time that the Jack and/or Jacking Point left Defendant BMW AG's control it was defective and was unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

    a.  The Jack's design and/or manufacture make the tire jack unstable and wobbly and difficult to use or hold steady during operation;

    b.  The Jack and Jacking Point's design and/or manufacture makes it unreasonably difficult to insert the Jack into the Vehicle and keep the Jack head in the Jacking Point while using the Jack;

    c.  The Jack's design and/or manufacture exerts lateral forces on the Jacking Point causing it to move away from the Jacking Point and causing the Vehicle to suddenly and unexpectedly drop down;

    d.  The base of the Jack is too small to support the Vehicle;

    e.  The design and/or manufacture of the Jacking Point in which the Jack is to be positioned is defective;

    f.  No warnings or inadequate warnings were provided about the risks, dangers, and harms presented by the Jack and/or Jacking Point and no

reasonable means to reduce such risks, dangers and harms were provided to the end user.

41.     The Jack and/or Jacking Point was expected by Defendant BMW AG to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

42.     Plaintiff Fischer was a person who would reasonably be expected to use the Jack and/or Jacking Point.

43.     The defects in the Jack and/or Jacking Point were the direct and proximate cause of Plaintiff Fischer's injuries and the resulting damages to Plaintiff Fischer.

44.     Defendant BMW AG is strictly liable to Plaintiff Fischer for the injuries to Plaintiff Fischer and for injuries and damages caused by defects in the design and/or manufacture of the Jack and/or Jacking Point.

## FIFTH CLAIM FOR RELIEF
### (Negligence – BMW AG)

45.     Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

46.     Defendant BMW AG owed a duty to Plaintiff Fischer, the end user, to use reasonable care in designing, assembling, producing, fabricating, constructing, testing, inspecting and/or other otherwise preparing a component part of the Jack and/or Jacking Point prior to the sale of the product to a user or consumer.

47.     At all relevant times, Defendant BMW AG had a duty to properly warn consumers of the risks, dangers, and harms presented by the Jack and/or Jacking Point and provide reasonable means to reduce such risks, dangers, and harms.

48.     Defendant BMW AG breached its various duties as set forth in this count. Defendant BMW AG designed, assembled, produced, fabricated, constructed, tested, inspected and/or other otherwise prepared the Jack and/or Jacking Point or a component part, that has the following defects, without limitation, described in the following subparagraphs:

      a.  The Jack's design and/or manufacture make the tire jack unstable and wobbly and difficult to use or hold steady during operation;

      b.  The Jack and Jacking Point's design and/or manufacture makes it unreasonably difficult to insert the Jack into the Vehicle and keep the Jack head in the Jacking Point while using the Jack;

      c.  The Jack's design and/or manufacture exerts lateral forces on the Jacking Point causing it to move away from the Jacking Point and causing the Vehicle to suddenly and unexpectedly drop down;

      d.  The base of the Jack is too small to support the Vehicle;

      e.  The design and/or manufacture of the Jacking Point in which the Jack is to be positioned is defective;

      f.  No warnings or inadequate warnings were provided about the risks, dangers, and harms presented by the Jack and/or Jacking Point and no reasonable means to reduce such risks, dangers and harms were provided to the end user.

49.     Defendant BMW AG's negligent acts and omissions were the direct and proximate cause of the injuries to Plaintiff Fischer and the resulting damages.

## SIXTH CLAIM FOR RELIEF
### (Breach of Warranties – BMW AG)

50.     Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

51.     An implied warranty of merchantability and/or an implied warranty of fitness existed with respect to the Jack and/or Jacking Point.

52.     Defendant BMW AG knew or had reason to know the particular purpose of the Jack and/or Jacking Point and that end users such as Plaintiff Fischer would rely on Defendant BMW AG's skill or judgment in selling, manufacturing, wholesaling, distributing, or retailing goods suitable for such purposes and uses.

53.     The Jack and/or Jacking Point was defective and not fit for the particular purpose for which it was intended and for which it was used.

54.     At the time the Jack and/or Jacking Point was designed, manufactured and/or sold with the Vehicle, Defendant BMW AG knew or reasonably should have known that it was defective and not reasonably safe for the uses intended.

55.     At the time the Jack and/or Jacking Point was designed, manufactured and sold with the Vehicle, Defendant BMW AG reasonably should have known that it was defective and posed unreasonable risks to the end user.

56.     Defendant BMW AG's breach of its implied warranties was a direct and proximate cause of the injuries to Plaintiff Fischer and the resulting damages to Plaintiff Fischer.

## SEVENTH CLAIM FOR RELIEF
### (Strict Product Liability – Storz and Bosal)

57.     Plaintiff Fischer incorporates by reference the previous allegations of the Complaint as if set forth specifically herein.

58.     At all times material to this action, Defendant Storz designed, assembled, produced, fabricated, constructed, tested, inspected and/or otherwise prepared tire jacks and/or

jacking points integrated into BMW vehicles, including the Jack and/or Jacking Point at issue in this action.

59.     At the time that the Jack and/or Jacking Point left Defendant Storz's control it was defective and was unreasonably dangerous to a person who might reasonably be expected to use it.  These defects include, but are not limited to, the conditions described in the following subparagraphs:

    a.   The Jack's design and/or manufacture make the tire jack unstable and wobbly and difficult to use or hold steady during operation;

    b.   The Jack and Jacking Point's design and/or manufacture makes it unreasonably difficult to insert the Jack into the Vehicle and keep the Jack head in the Jacking Point while using the Jack;

    c.   The Jack's design and/or manufacture exerts lateral forces on the Jacking Point causing it to move away from the Jacking Point and causing the Vehicle to suddenly and unexpectedly drop down;

    d.   The base of the Jack is too small to support the Vehicle;

    e.   The design  and/or manufacture of the Jacking Point in which the Jack is to be positioned is defective;

    f.   No warnings or inadequate warnings were provided about the risks, dangers, and harms presented by the Jack and/or Jacking Point and no reasonable means to reduce such risks, dangers and harms were provided to the end user.

60. The Jack and/or Jacking Point was expected by Defendant Storz to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

61. Plaintiff Fischer was a person who would reasonably be expected to use the Jack and/or Jacking Point.

62. The defects in the Jack and/or Jacking Point were the direct and proximate cause of Plaintiff Fischer's injuries and the resulting damages to Plaintiff Fischer.

63. Defendant Storz is strictly liable to Plaintiff for the injuries to Plaintiff Fischer and for injuries and damages caused by defects and inadequacies in the design and/or manufacture of the Jack and/or Jacking Point.

64. Defendant Bosal is strictly liable to Plaintiff for the injuries to Plaintiff Fischer and for injuries and damages caused by defects and inadequacies in the design and/or manufacture of the Jack and/or Jacking Point for having acquired the assets and/or liabilities of Defendant Storz.

## JURY DEMAND

Trial to a Jury of six (6) people is demanded on all issues so triable.

**WHEREFORE, Plaintiff Fischer respectfully prays for judgment in his favor and against Defendants for damages in an amount to be determined at trial, pre- and post-judgment interest, costs and expert witness fees, and for such other and further relief as the Court may deem proper.**

Dated this 16th day of January, 2018.

RESPECTFULLY SUBMITTED,

Ronnie Fischer, *Pro Se*
1777 S. Harrison Street, Suite 1500
Denver, Colorado 80210
Telephone: (303) 756-2500
Fax: (303) 756-2506
E-mail: ronnie@fischeresq.com

Plaintiff's Address:  1777 S. Harrison St., Suite 1500, Denver, Colorado 80210