IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00120-PAB-MEH

RONNIE FISCHER,

    Plaintiff,

v.

BMW OF NORTH AMERICA, LLC,
BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,
E.A. STORZ GMBH & CO. KG, and
BOSAL INTERNATIONAL NV,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Defendant Bayerische Motoren Werke Aktiengesellschaft's Amended Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 46]. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

On or about January 14, 2016, plaintiff was changing the front tire of a 2003 BMW when the tire jack and/or jacking point failed, causing the vehicle to drop and pin plaintiff's finger between the asphalt and a lug wrench. Docket No. 1 at 3, ¶¶ 9, 12-13. As a result of the incident, plaintiff suffered permanent injuries, including the amputation of a portion of his middle finger. *Id.*, ¶ 13.

---

[1]The following facts are taken from the complaint, Docket No. 1, and are presumed to be true for purposes of the motion to dismiss.

Plaintiff filed this lawsuit on January 16, 2018 asserting claims for strict product liability, negligence, and breach of warranty against various entities involved in the manufacture and distribution of the jack and jacking point involved in the incident. Docket No. 1. On July 6, 2018, defendant Bayerische Motoren Werke Aktiengesellschaft, a German automobile manufacturer, moved to dismiss plaintiff's claims against it for lack of personal jurisdiction. Docket No. 46. Plaintiff filed a response to the motion on August 3, 2018. Docket No. 53. Defendant filed a reply on August 24, 2018. Docket No. 55.

## II. LEGAL STANDARD[2]

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov*, 514 F.3d at 1070. The Court will accept the well-pleaded allegations of the complaint as true in determining whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d

---

[2]The Tenth Circuit has noted that the extent of a plaintiff's burden to establish personal jurisdiction and the scope of a court's review "depend in part on the nature of the district court's response to defendants' motion seeking dismissal for lack of personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). "A district court has discretion to resolve such a motion in a variety of ways – including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself." *Id.* Here, plaintiff has indicated that no hearing is necessary. Docket No. 53 at 13 (requesting an order "that no hearing is necessary"). In addition, both parties have submitted evidence in support of their positions. The Court will therefore exercise its discretion to resolve defendant's motion based on the documents submitted by the parties. This decision dictates the standard of review applied. *See Dudnikov*, 514 F.3d at 1070.

1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id*.

### III. ANALYSIS

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established

3

under the doctrines of general jurisdiction or specific jurisdiction. Where general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff does not argue that defendant is subject to general jurisdiction in Colorado. *See* Docket No. 53 at 2 ("Specific personal jurisdiction over BMW AG complies with Colorado's long arm statute and constitutional due process."), 7 ("BMW AG has sufficient minimum contacts for specific personal jurisdiction in Colorado based on the stream of commerce doctrine."). The Court therefore limits its analysis to the issue of specific jurisdiction.

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109

4

(1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 105. The Court considers several factors as part of this analysis, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp.*, 471 U.S. at 477.

### A. Stream of Commerce Framework

Plaintiff seeks to establish specific personal jurisdiction under a stream of commerce theory. *See* Docket No. 53 at 7. This theory was first articulated in *World-Wide Volkswagen Corp.*, where the Supreme Court stated that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98. As plaintiff notes, however, two subsequent Supreme Court decisions have placed the "proper framework for a stream of commerce analysis . . . in flux." Docket No. 53 at 7. In *Asahi Metal Industry Co.*, the Supreme Court addressed "whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes 'minimum contacts' between the defendant

5

and the forum State such that the exercise of jurisdiction 'does not offend "traditional notions of fair play and substantial justice."'" 480 U.S. at 105. In a plurality opinion, Justice O'Connor answered this question in the negative. She concluded that

> [t]he "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.

*Id.* at 112 (plurality op.) (internal citations omitted). Justice Brennan, joined by three other justices, filed an opinion concurring in the judgment but disagreeing with Justice O'Connor's stream of commerce analysis. Justice Brennan concluded it was unnecessary to require plaintiffs to show "'additional conduct' directed toward the forum before finding the exercise of jurisdiction over the defendant to be consistent with the Due Process Clause." *Id.* at 117 (Brennan, J., concurring) (bracket omitted). He reasoned that

> [t]he stream of commerce refers not to unpredictable currents or eddies but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.

*Id.*

The Supreme Court sought to clarify the stream of commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). In that case, the Supreme Court considered whether the New Jersey state courts could exercise jurisdiction over a British manufacturer of a metal-shearing machine that had caused injury to the plaintiff in New Jersey, "notwithstanding the fact that the company at no time either marketed

6

goods in the State or shipped them there." *Nicastro*, 564 U.S. at 878. The plaintiff premised his jurisdictional argument on three facts: the defendant's distributor had agreed to market the defendant's machines in the United States, several of the defendant's employees had attended trade shows in the United States, and four of the defendant's machines had ended up in New Jersey. *Id.* at 886. In a fractured opinion, the Supreme Court held that these facts were insufficient to support the state courts' exercise of jurisdiction. The plurality opinion, authored by Justice Kennedy, concluded that "Justice Brennan's concurrence [in *Asahi*] . . . [was] inconsistent with the premises of lawful judicial power" and that "the stream-of-commerce metaphor [could not] supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures." *Id.* at 886 (plurality op.). Justice Breyer filed a concurring opinion, joined by Justice Alito, in which he rejected the plurality's "strict no-jurisdiction rule," but agreed, based on the facts of the case, that there was "no 'regular flow' or 'regular course' of sales in New Jersey" and "no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else" to support the exercise of jurisdiction. *Id.* at 889-90 (Breyer, J., concurring) (internal quotation marks omitted).

The Tenth Circuit has yet to interpret the conflicting opinions of *Asahi* and *Nicastro* to determine the proper framework for a stream-of-commerce analysis. *See Monge v. RG Petro-Machinery (Group) Co.*, 701 F.3d 598, 620 (10th Cir. 2012) (finding the evidence insufficient to support jurisdiction based on either of the stream of commerce frameworks applied in *Asahi*). As plaintiff notes, however, at least one court

7

in this district has stated that "it is reasonably clear from the divided Supreme Court decisions that 'something more' than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." *Colo. Cas. Ins. Co. v. Fu San Mach. Co., Ltd.*, No. 16-cv-01244-RBJ, 2017 WL 3189879, at *7 (D. Colo. May 15, 2017); *see also* Docket No. 53 at 8.[3]  The Court finds this to be an accurate summary of the law after *Nicastro*.  *See Nicastro*, 564 U.S. at 890-91 (Breyer, J., concurring) (rejecting the view that "a producer is subject to jurisdiction for a products-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states"); *see also Lynch v. Olympus Am., Inc.*, No. 18-cv-00512-NYW, 2018 WL 5619327, at *4 n.5 (D. Colo. Oct. 30, 2018) (noting, after survey of cases applying stream of commerce theory following *Nicastro*, that not a single court in the Tenth Circuit has "applied the most permissive [stream of commerce test], which only requires a defendant to put the offending product into the stream of commerce without any action specifically directed at the forum itself").  The Court also agrees that the remaining "challenge is determining whether each new set of facts does or does not provide the 'something more.'" *Fu San Mach. Co., Ltd.*, 2017 WL 3189879, at *7.  As discussed below, the Court finds that plaintiff has not shown the "something more" required to support the exercise of specific personal jurisdiction in this case.

### B.  Minimum Contacts

---

[3]Plaintiff characterizes this as the "stream of commerce plus" test.  *See* Docket No. 53 at 8.

Plaintiff's well-pled allegations, and the uncontested evidence presented by the parties, establish the following jurisdictional facts. Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG" or "defendant") is a publicly traded German automobile, motorcycle, and engine manufacturing company with headquarters located in Munich, Germany. Docket No. 1 at 2, ¶ 3; Docket No. 46-2 at 2, ¶ 4. BMW AG "designs and manufactures BMW brand motor vehicles" but does not do so in Colorado. Docket No. 46-2 at 2, ¶ 5. BMW AG also does not maintain a sales force in Colorado, send marketing materials to consumers in Colorado, maintain a service agent in Colorado, or distribute BMW vehicles to dealers or consumers in Colorado. Docket No. 46-2 at 3, ¶¶11-14, 16. Additionally, BMW AG is not licensed or authorized to do business anywhere in the United States. Docket No. 46-2 at 3, ¶ 17.

BMW of North America, LLC ("BMW NA") is a Delaware limited liability company with its principal place of business in New Jersey. Docket No. 46-2 at 2, ¶ 6. BMW NA is an indirect subsidiary of BMW AG, Docket No. 1 at 2, ¶ 4; Docket No. 46-2 at 2, ¶ 6; however, the companies are "separate, distinct and independent corporate business entit[ies]" with "separate procedures and policies." Docket No. 46-2 at 2, ¶¶ 6-8.

The various BMW entities operate a "global sales network . . . compris[ing] around 3,400 BMW, 1,580 MINI and 140 Rolls-Royce dealerships." Docket No. 53-1 at 4. "Sales outside Germany are handled primarily by subsidiary companies and by independent import companies in some markets." *Id.* BMW NA is the exclusive distributor of new BMW vehicles in the United States. Docket No. 46-2 at 3, ¶ 10. BMW AG does not control this distribution or conduct any sales campaigns directed at the general public in the United States. *Id.*, ¶¶ 10, 14.

9

Defendant argues that it does not have sufficient minimum contacts with Colorado to allow the Court to exercise personal jurisdiction consistent with the Due Process Clause. Docket No. 46 at 7. In response, plaintiff contends that defendant's contacts with Colorado satisfy the "stream of commerce plus" test in three ways: (1) defendant has created a global distribution system and marketed its automotive products through a "sales agent" in Colorado; (2) defendant has voluminous sales in the United States; and (3) BMW NA's contacts with Colorado may be imputed to defendant for jurisdictional purposes. *See* Docket No. 53 at 8-11.[4] For the reasons discussed below, the Court does not find any of these arguments sufficient to establish personal jurisdiction.

Plaintiff first contends that defendant "markets its automotive products through a distributor – an exclusive distributor, BMW NA – who has agreed to serve as sales agent in Colorado." Docket No. 53 at 8. Plaintiff relies on a portion of the plurality opinion in *Asahi* where Justice O'Connor discussed "additional conduct" that may be sufficient to demonstrate a defendant's "intent or purpose to serve the market in the forum State" – i.e., the "something more" required under the stream of commerce plus test. *Asahi*, 480 U.S. at 112 (plurality op.). Such conduct included

> designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Id.* Plaintiff asserts that the last example describes the facts of this case because

---

[4]Plaintiff also argues that the evidence is sufficient to support personal jurisdiction under a pure "stream of commerce" theory. However, the Court has already determined that a majority of the Supreme Court in *Nicastro* rejected such a theory.

defendant has both "created the distribution system that brought the automobile to Colorado" and marketed its products through BMW NA, which has agreed to serve as a sales agent in the state. Docket No. 53 at 8. However, plaintiff has offered no allegations or evidence that defendant specifically targeted Colorado with its distribution efforts, see Docket No. 53-1 at 4 (describing a "global sales network" in which "[s]ales outside Germany are handled primarily by subsidiary companies and by independent import companies"), and the creation of a global, or even nationwide, distribution system is insufficient, standing alone, to demonstrate minimum contacts with Colorado. See Nicastro, 564 U.S. at 885-86 (plurality op.) (finding no personal jurisdiction where the defendant "directed marketing and sales efforts at the United States"); id. at 891 (Breyer, J., concurring) (rejecting view that "a producer is subject to jurisdiction so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system," as such an approach would "abandon the heretofore accepted inquiry of whether, focusing upon the relationship between the defendant, the forum, and the litigation, it is fair, in light of the defendant's contacts with that forum, to subject the defendant to suit there" (internal quotation marks omitted)); Lynch, 2018 WL 5619327, at *8 ("The development of a global or country-level marketing plan does not rise to the level of a 'substantial connection' that 'came about by an action of [the defendant] purposefully directed towards Colorado.'" (internal brackets omitted) (quoting Asahi, 480 U.S. at 112)).

Plaintiff also has not demonstrated that BMW NA is defendant's "sales agent" in Colorado. Docket No. 53 at 8. Plaintiff relies on the declaration of Jakob Hölldobler

11

and Moritz Scharpenseel, in-house legal counsel for BMW AG, which states that (1) "BMW NA is the exclusive United States distributor for new BMW brand vehicles in the United States"; (2) "BMW AG does not make direct sales of BMW vehicles" in Colorado; and (3) "BMW NA . . . conducts sales campaigns directed at the general public in the United States, including the State of Colorado." Docket No. 46-2 at 1-2, 3, ¶¶ 1-3, 10, 11, 14. However, these facts do not establish the "additional conduct" described in *Asahi* as indicative of "an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112. As the Supreme Court recognized in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the cited portion of Justice O'Connor's opinion stands for the proposition that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* at 135 n.13. But this implies some degree of direction or control by the defendant. *See Eaves v. Pirelli Tire, LLC*, 2014 WL 1883791, at *17-18 (D. Kan. May 12, 2014) (rejecting argument that distributor's involvement in sale of defendant's products "matche[d] what Justice O'Connor was describing in *Asahi*" where the distributor "unilaterally decide[d] when and where to distribute [the defendants'] tires in the United States," and the defendants did "not exercise any control, direction, or influence on these distribution decisions or on [the distributor's] advertising or sales efforts"); *Micheli v. Techtronic Indus., Co., Ltd.*, 2012 WL 6087383, at *13 (D. Mass. Mar. 1, 2013) ("While Asahi does identify the marketing of a product 'through a distributor who has agreed to serve as the sales agent in the forum State' as a plus factor, there is no evidence that . . . The Home Depot is an agent of the domestic subsidiaries. An agency relationship would exist only if the domestic

12

subsidiaries had manifested their assent to have The Home Depot act on [their] behalf and subject to [their] control." (internal citation and brackets omitted)).[5]  Absent direction or control, the mere fact that a distributor sells a defendant's products in the forum state does not support the exercise of jurisdiction.  *See Nicastro*, 564 U.S. at 878 and 887 (plurality op.), 892-93 (Breyer, J., concurring) (finding defendant's contacts with the forum state insufficient to establish personal jurisdiction where there was no evidence that the U.S. distributor was under the defendant's control); *Eaves*, 2014 WL 1883791, at *18 (finding no personal jurisdiction where defendants did not exercise any control over distributor's advertising, sales, or distribution efforts).[6]

---

[5] It is not clear whether the "additional conduct" described in *Asahi* and relied on by plaintiff in this case is synonymous with an agency theory of personal jurisdiction.  *Compare Daimler AG*, 571 U.S. at 135 n.13 (citing Justice O'Connor's opinion in *Asahi* to support the proposition that "[a]gency relationships . . . may be relevant to the issue of specific jurisdiction" (emphasis omitted)), *with Gourdine v. Karl Storz Endoscopy-America, Inc.*, 223 F. Supp. 3d 475, 487 (D.S.C. 2016) (finding that a manufacturer's use of a "sales agent in the forum State" supports a "direct availment" rather than agency theory of personal jurisdiction).  The Court need not resolve the issue, as it has separately considered the viability of an agency theory of personal jurisdiction below.

[6] Nor does a parent-subsidiary relationship alone establish the direction or control required for a defendant's conduct to match the "additional conduct" described by Justice O'Connor in *Asahi*.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (finding that the activities of a subsidiary could not be imputed to its parent corporation for purposes of establishing personal jurisdiction because "[a] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity" (internal quotation marks and bracket omitted)); *Ferrari v. Mercedes Benz USA,* LLC, 2017 WL 3115198, at *2 (N.D. Cal. July 21, 2017) ("Agency relationships may be relevant to the existence of specific jurisdiction, and a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.  However, if a parent and subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other." (internal citations, quotation marks, and brackets omitted)); *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1059-60 (C.D. Cal. 2015) (finding that the defendant's subsidiary was a "distributor who has agreed to serve as a sales agent in the forum State" where the two entities did not have

Here, plaintiff has not made any allegations or presented any evidence showing that defendant exercised control over BMW NA's distribution efforts in the United States. To the contrary, the uncontested declaration by defendant's in-house counsel establishes that defendant and BMW NA are "separate, distinct and independent corporate business entit[ies]" and that "BMW AG does not control the distribution of BMW vehicles in the United States." Docket No. 46-2 at 2-3, ¶¶ 6, 10. Therefore, plaintiff's assertion that defendant "market[ed its automotive products] through [BMW NA] who has agreed to serve as sales agent" in Colorado, Docket No. 53 at 8, is unsupported.

Plaintiff also seeks to base jurisdiction on defendant's "voluminous sales" in the United States. *Id.* at 9. The evidence shows that the "United States [was] the largest single country market, after China," in 2017, *id.*, accounting for 353,819 units sold. Docket No. 53-1 at 6. However, the fact that there were significant sales of defendant's products in the United States does not establish that defendant has sufficient minimum contacts with Colorado. *See Nicastro*, 564 U.S. at 886 (plurality op.) (noting that it was "petitioner's purposeful contacts with New Jersey, not with the United States" that were relevant to the jurisdictional analysis); *id.* at 891 (Breyer, J., concurring) (emphasizing that the jurisdictional analysis focuses on the relationship between the defendant and the forum and rejecting view that jurisdiction may be established based solely on the existence of a nationwide distribution system); *Lynch*, 2018 WL 5619327, at *8 (holding

---

a "hands-of parent-subsidiary relationship," but instead "worked closely together on the distribution, sale, lease, servicing, and warranting of the Subject Nissan Vehicles" (internal quotation marks omitted).

that the "fact that defendant [had] sold thousands of scopes in the United States [was] insufficient" to establish personal jurisdiction because the plaintiff had "not pleaded any facts which demonstrate that [defendant] itself sought out the Colorado market"); *Eaves*, 2014 WL 1883791, at *19 (finding no personal jurisdiction under the stream of commerce approach where "[t]here [was] nothing of record indicating the extent to which Metzeler tires flowed into Kansas and were sold there").

Plaintiff relies on two cases – *Etchieson v. Central Purchasing LLC*, 232 P.3d 301 (Colo. App. 2010), and *Colorado Casualty Insurance Co. v. Fu San Machinery Co.* to support his position that a court may base jurisdiction on a defendant's country-wide sales. Docket No. 53 at 9-10. Plaintiff's reliance is unpersuasive. *Etchieson* was decided before *Nicastro* and, in any event, is not binding on this Court's federal due process analysis. *See Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1198 (D. Colo. 2015) (stating that inquiry into whether a court's exercise of personal jurisdiction comports with due process is "a question of federal law"). And *Fu San Machinery Co.*'s finding of specific jurisdiction was not based solely on the defendant's sales to the United States. In holding that the facts satisfied the "minimum contacts" requirement, the court also relied upon the defendant's failure to respond to the plaintiff's jurisdictional discovery and the defendant's refusal "to acknowledge that personal jurisdiction [could] be obtained over it in any state of the United States." 2017 WL 3189879, at *7. Neither of these circumstances is present in this case.

For his final argument, plaintiff asserts that "a nonresident defendant may be subject to personal jurisdiction in Colorado based on the imputed contacts of the

nonresident defendant's agent." Docket No. 53 at 11 (internal quotation marks and bracket omitted). While courts have recognized an agency or alter ego theory of personal jurisdiction under which the activities of a subsidiary company may be imputed to its parent, *see, e.g.*, *Daimler AG*, 571 U.S. at 134-35, 135 n.13 (discussing theory that subsidiary's jurisdictional contacts may be imputed to its parent "when the former is so dominated by the latter as to be its alter ego," and noting that "[a]gency relationships . . . may be relevant to the existence of *specific* jurisdiction"); *Benton*, 375 F.3d at 1081 (considering argument that subsidiary's contacts could be imputed to parent company under agency or alter ego theory); *Warad West, LLC v. Sorin CRM USA, Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) (noting that an "alter ego theory of personal jurisdiction has been consistently acknowledged in the federal courts" (internal quotation marks omitted)), plaintiff has not provided any allegations or evidence to support a finding that BMW NA is the general agent or alter ego of defendant. Moreover, the mere existence of a parent-subsidiary relationship will not suffice. *See Benton*, 375 F.3d at 1081 (rejecting argument that court had general jurisdiction over the defendant based on the contacts of its wholly-owned U.S. subsidiary where the plaintiff had "not alleged nor produced evidence to show that [the subsidiary was] the general agent or alter ego of [the defendant]"); *Warad West, LLC*, 119 F. Supp. 3d at 1298 (noting that "[t]he ultimate jurisdictional question" under an alter ego theory "is whether the subsidiary is doing the business of the parent" (internal quotation marks omitted)).[7]

---

[7]Although some courts have recognized that agency and alter ego represent distinct legal concepts, *see, e.g.*, *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F.

In summary, plaintiff has not demonstrated sufficient minimum contacts between defendant and Colorado to support the exercise of specific personal jurisdiction. The Court will therefore grant defendant's motion to dismiss for lack of personal jurisdiction without reaching the issue of whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co.*, 480 U.S. at 105.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Bayerische Motoren Werke Aktiengesellschaft's Amended Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 46] is **GRANTED**. It is further

**ORDERED** that defendant Bayerische Motoren Werke Aktiengesellschaft is dismissed from this case.

DATED March 25, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge

---

Supp. 2d 1161, 1166 (D. Colo. 2003) (noting, in personal jurisdiction analysis, that agency and alter ego are "different legal concepts"); *Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 216 n.2 (D.N.H. 2000) (noting the distinction between the "issue of agency," which allows for "forum-related contacts made by an agent acting within the scope of an agency relationship [to be] attribut[ed] to the principal," and "the issue of whether a parent corporation is subject to personal jurisdiction based on the contacts of its subsidiary, a question that depends upon the piercing of the corporate veil"), the facts alleged in this case do not support application of either theory.